**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **CALVIN RAY BRATTON,** | ) | |
| **ID #1210821** | ) | |
| **Petitioner,** | ) | |
| **vs.** | ) | **No. 3:07-CV-633-K (BH)** |
| | ) | |
| **NATHANIEL QUARTERMAN, Director,** | ) | **Referred to U.S. Magistrate Judge** |
| **Texas Department of Criminal** | ) | |
| **Justice, Correctional Institutions Division,** | ) | |
| **Respondent.** | ) | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**

Pursuant to the provisions of 28 U.S.C. § 636(b), and an Order of the Court in implementation thereof, subject cause has previously been referred to the United States Magistrate Judge. The findings, conclusions, and recommendation of the Magistrate Judge are as follows:

## I. BACKGROUND

**A.    Nature of the Case**

Petitioner, an inmate currently incarcerated in the Texas Department of Criminal Justice - Correctional Institutions Division (TDCJ-CID), filed the instant petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 to challenge three convictions for aggravated robbery in Cause Nos. F02-57911-KIK, F02-57912-KIK, and F02-57913-KIK. Respondent is Nathaniel Quarterman, Director of TDCJ-CID.

**B.    Procedural and Factual History**

On January 23, 2003, the State handed down three indictments against petitioner for aggravated robbery. (Trial Transcripts [F02-57911, F02-57912, F02-57913] at 2). After petitioner pled not guilty to the charged offenses, on December 4-5, 2003, he was tried before a jury, found guilty of all three offenses, and sentenced by the court to three concurrent thirty-five year sentences.

(R. 4: 26;R. 5:15).

On direct appeal, petitioner challenged the trial court's admission of two co-defendants' statements into evidence and the instruction on reasonable doubt contained in the instructions given to the jury. The Fifth District Court of Appeals affirmed petitioner's convictions in a published opinion. *Bratton v. State*, 156 S.W.3d 689 (Tex. App.–Dallas, 2003, pet. ref'd). The state appellate court recounted the evidence at trial as follows:

> Velasco, Sirmans, and Cox were walking toward their cars after leaving a bar in the lower Greenville area in the early morning hours of December 28, 2002, when they were approached by "four or five" hooded African-Americans. At least one of these hooded individuals robbed Velasco at gunpoint, another robbed Sirmans, and a third robbed Cox, also at gunpoint. The robbers then fled, and Velasco called 911. The police arrived and within minutes drove Velasco, Sirmans, and Cox to a location where five African-Americans were being held. These individuals had been seen speeding away in their car from the area where the robberies occurred and throwing a wallet and cards out the window before being stopped. Although one of the cards belonged to Velasco, none of the victims were able to identify these individuals as the robbers. However, three of these individuals, Luther Hargraves, Jason Ward, and Derrin Curl, subsequently gave voluntary written statements admitting to the robberies and implicating Bratton and Hargraves's mother Shanda.

> At trial, Velasco and Cox testified that because of the robbers' hoods and the lighting where the robberies occurred, they were not able to identify any of the robbers. Van Johnson, a passerby who witnessed the robberies, also testified and acknowledged that he could not identify any of the robbers either.

> Dallas police officer Genaro Hernandez testified he was working undercover in the area where the robberies occurred when he noticed a "suspicious" car parked on the wrong side of the street. The car was running but the lights were turned off, and it appeared to Hernandez that the driver was waiting for someone to return. Because of the suspicious nature of the car, Hernandez decided to watch the car from a distance. Moments later, he saw the car, with several occupants, drive away at a high rate of speed. Hernandez radioed for back-up and began following the car. According to Hernandez, the driver ran several stop signs but stopped once uniformed officers in a marked squad car pulled the car over. Four men and a woman were in the car-Hargraves, Bratton, Curl, Ward, and Shanda. All cooperated but Bratton, who started running. Bratton was eventually caught, however, and arrested with the others. At the time, Bratton was not wearing a hooded jacket, although an officer did observe him "trying to get out of his clothes."

2

Russell Taylor, the officer who pulled the car over, testified that he observed a wallet and cards being thrown out the window as he pulled up to the suspects' car. According to Taylor, Shanda was driving, Bratton was in the front passenger seat, Curl was behind Shanda, Hargraves was in the middle back seat, and Ward was behind Bratton. Based on the seating arrangement, Taylor believed it was Ward who had thrown the items out of the window. Taylor also testified that a search of the car revealed two stocking caps, three sets of cut pantyhose, and two firearms-one under the front passenger seat and the other under the driver's seat.

Dallas police officer Rudy Contreras testified he obtained the statements from Hargraves, Curl, and Ward. Over objection, Curl's and Ward's statements were admitted into evidence and read to the jury. According to their statements, when they got out of the car to commit the robberies, Bratton got out with them. Although they suggested Bratton was with them when the robberies occurred, neither one mentioned how Bratton participated. Specifically, Curl stated,

> I was at Shanda's house sleeping. When I woke up, [Hargraves], [Bratton], and me were smoking weed. Then we went to get [Ward]. We stopped to get some gas. We went by the club, then we hit the lick. [Ward] had his gun. I had the .38. We saw the two white guys. Then we got out of the car. We all four jumped out of the car. We did the lick. I got the wallet and the cell phone. We went back to the car and burned off. I'm sorry for doing this. We shouldn't have been there in the first place.

Ward's statement provided a little more detail:

> My girl told me that someone from Shanda's house called looking for me, so I called them back. I asked to speak to Shanda. She said that they had been talking about getting some money. [Bratton], [Hargraves], and Curl were at Shanda's house. They had been talking about hitting a lick. First we went to get some gas. Then we rode down Greenville. Shanda drove. [Bratton] was in the front seat. I was behind [Bratton]. [Hargraves] was in the middle of the back seat. Curl was behind Shanda's seat. [Bratton], [Hargraves], Curl and me got out of the car. We walked up to some white guys. Curl said, 'Give me what you got.' I saw Curl with a gun. I had the other gun in my pocket. We ran back to the car. I'm sorry for what happened. We weren't out to hurt nobody. The pistols weren't drawn. There were four of us and two of them. We were trying to bluff them. We were trying to scare them. We were just trying to get gas money, soap and tissue. We have only one bar of soap at the house, one roll of tissue. We're just struggling man.

Contreras testified he also interviewed Bratton. Although Bratton admitted to him he had gotten out of the car with Hargraves, Curl, and Ward, Bratton denied any involvement or knowledge of the robberies. According to Contreras, Bratton explained he had gotten out so that he could "relieve himself" and did not know what the other three did.

The State's final witness, Hargraves, testified he had pleaded guilty to the robberies and received five years deferred adjudication. As part of the plea, he agreed to testify as a State witness in Bratton's trial. Hargraves testified that two days before the robberies, he had heard Bratton saying he needed some money and wanted to "hit a lick." Then, on the night of the robberies, he heard Shanda and Bratton talk about "hitting a lick" again. Although he admitted he was present when the robberies were committed, Hargraves denied playing an active role and testified that Bratton was "just...standing like over on the side" when Curl and Ward pulled out their guns. Hargraves also testified that Bratton was not wearing a hooded jacket that night but did have on a "beanie cap." On cross-examination, Hargraves stated that everyone in the car that night, including Bratton and Shanda, were involved in the robberies. Hargraves also stated he believe his probation might be revoked if he did not testify that Bratton was involved in the robberies.

Bratton did not testify and did not call any witnesses. He was prosecuted as a party to the aggravated robberies and found guilty as charged in the indictments.

*Id*. at 690-92 (footnotes omitted).

On November 28, 2006, petitioner filed three state applications for writ of habeas corpus challenging each of his convictions raising the same issues as in his federal petition. (State Habeas Transcript [WR-66,831-01]:52[1]). The Court of Criminal Appeals denied petitioner's state applications on February 21, 2007, without written order on the findings of the trial court without a hearing. (S.H.Tr.:cover).

On April 1, 2007, petitioner filed three petitions for federal habeas relief (Petition at 9); *see also Coleman v. Johnson*, 184 F.3d 398, 401 (5th Cir. 1999) (recognizing that prisoners file their federal pleadings when they place them in the prison mail system). Respondent filed an answer on

---

[1] While there are separate state habeas transcripts for each of petitioner's convictions, the contents are the same because petitioner filed one writ application challenging all three convictions. The Court therefore cites to only one.

October 5, 2007, (*see* Answer) and provided the state-court records.[2]

## C.    <u>Substantive Issues</u>

Petitioner asserts the following claims:

(1)  petitioner was denied his right to confront witnesses and his due process rights when the trial court admitted in evidence, over defense objection, two accomplice statements (grounds one and eight);

(2) the State used peremptory strikes to strike African-American veniremembers in violation of *Batson v. Kentucky* (ground two);

(3) trial counsel provided ineffective assistance by

-failing to object to the admission of the accomplices' statements into evidence on the basis that extraneous offenses were contained in the statements that rendered them extremely prejudicial to petitioner (ground four);

-failing to request a jury instruction requiring the jury to find the existence of extraneous offenses beyond a reasonable doubt before considering them (ground six);

-failing to object to the State's failure to provide adequate notice that it intended to introduce extraneous offenses at the guilt phase of the trial (ground ten);

(4) appellate counsel provided ineffective assistance by

-failing to adequately brief the issue of the harm suffered by petitioner by the admission of the two accomplice statements into evidence (ground three);

-failing to raise as an issue on appeal that trial counsel was ineffective for failing to request a reasonable doubt jury instruction for extraneous offenses (ground five);

-failing to raise on appeal the issue that the trial court erred by denying the defense request for a specific jury instruction on the law of parties (ground seven); and

-failing to raise *Batson* error as an issue on appeal (ground nine).

---

[2]  Respondent asserts that petitioner has filed a federal petition in which he contests only one of his convictions, but in actuality, petitioner filed three separate identical petitions attacking each of his three convictions, and his memorandum in support of his petitioner clearly states that it applies to all three convictions.

**D.    Exhaustion**

Respondent states that petitioner has exhausted his state court remedies.

## II.  APPLICABLE LAW

Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. 104-132, 110 Stat. 1217, on April 24, 1996.  Title I of the Act applies to all federal petitions for habeas corpus filed on or after its effective date.  *Lindh v. Murphy*, 521 U.S. 320, 326 (1997).  Because petitioner filed his petition after its effective date, the Act applies.

Title I of AEDPA substantially changed the way federal courts handle habeas corpus actions. Under 28 U.S.C. § 2254(d), as amended by AEDPA, a state prisoner may not obtain relief with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

"In the context of federal habeas proceedings, a resolution (or adjudication) on the merits is a term of art that refers to whether a court's disposition of the case was substantive, as opposed to procedural."  *Miller v. Johnson*, 200 F.3d 274, 281 (5th Cir. 2000).  In this case, the denial of petitioner's state writ constitutes an adjudication on the merits.  *See Ex parte Thomas*, 953 S.W.2d 286, 288-89 (Tex. Crim. App. 1997) (holding that a denial, rather than a dismissal, signifies an adjudication on the merits).  The AEDPA standards enumerated in 28 U.S.C. § 2254(d) therefore apply.

Section 2254(d)(1) concerns pure questions of law and mixed questions of law and fact.

*Martin v. Cain*, 246 F.3d 471, 475 (5th Cir. 2001). A decision is contrary to clearly established federal law, within the meaning of § 2254(d)(1), "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000).

With respect to the "unreasonable application" standard, *Williams* instructs that a writ must issue "if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413; *accord Penry v. Johnson*, 532 U.S. 782, 792 (2001). Likewise under *Williams*, a state court unreasonably applies Supreme Court precedent if it "unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." 529 U.S. at 407. "[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id.* at 409; *accord Penry*, 532 U.S. at 793.

Section 2254(d)(2) concerns questions of fact. *Moore v. Johnson*, 225 F.3d 495, 501 (5th Cir. 2000). Under § 2254(d)(2), federal courts "give deference to the state court's findings unless they were 'based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.'" *Chambers v. Johnson*, 218 F.3d 360, 363 (5th Cir. 2000). The resolution of factual issues by the state court is presumptively correct and will not be disturbed unless the state prisoner rebuts the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

# III. ADMISSION OF STATEMENTS

In his first ground for relief, petitioner asserts that his rights under the confrontation clause of the Sixth Amendment were violated because the trial court admitted into evidence, over defense objection, written statements from two co-defendants. In his eighth ground for relief, petitioner asserts that any relevance of the statements was outweighed by their prejudicial effect. In particular, petitioner asserts that these statements were admitted into evidence in violation of *Crawford v. Washington*, 541 U.S. 36 (2004), and that while this claim was addressed on direct appeal, that court did not take into account the harm petitioner suffered because extraneous non-adjudicated offenses committed by him were included in the two statements.[3] He claims that the references in the statements to him smoking marijuana were highly prejudicial because the jury might have inferred that he would have been more likely to rob to support a drug habit and might have been under the influence of drugs when the robbery occurred, which could have affected his judgment. (Memorandum at 3).

Under the confrontation clause of the Sixth Amendment, the accused in a criminal prosecution has the right to be confronted with the witnesses against him. U.S. CONST. amend VI. However, the Confrontation Clause does not preclude the admission of *any* hearsay testimony. Instead, the Supreme Court held in *Crawford* that the Confrontation Clause prohibits the admission into evidence of out-of-court testimonial statements such as statements to a police officer offered for the truth of the matter asserted, unless the witness is unavailable and there was a prior

---

[3] Respondent alleges that petitioner is procedurally barred from raising this claim at the federal level because the state habeas court denied relief based on a state procedural rule. The state habeas court, however, declined to address this claim on its merits *again* because it was raised and rejected on direct appeal. (S.H.Tr.:cover, 68). Petitioner exhausted his state court remedies by raising this claim on direct appeal and in a petition for discretionary review filed with the Court of Criminal Appeals. Petitioner is therefore not procedurally barred from raising this issue on federal habeas review.

opportunity to cross-examine the witness. *Id.* at 68-69.

Here, the trial court admitted the written statements of Derrin Curl ("Curl") and Jason Ward ("Ward") over defense counsel's objection that their admission violated petitioner's rights under the Confrontation Clause and any relevance they had was outweighed by undue prejudice to petitioner. (R. 3:110-119, 124). Citing *Crawford*, the court of appeals found that it was error for the trial court to admit the two statements into evidence because they are testimonial in nature, the two accomplices were available to testify, and there had been no prior opportunity for the defense to question the two men. *Bratton*, 156 S.W.2d at 693-94. It also held, however, that the error was harmless beyond a reasonable doubt because another co-defendant testified at trial to petitioner's involvement, petitioner's involvement was corroborated by evidence independent of the two statements, and the statements did not add to the State's proof because they did not disclose any specific acts petitioner might have committed during the robberies. *Id*. at 695.

As noted by the state appellate court, the trial court's decision to admit these two statements into evidence was error under *Crawford*. Curl and Ward gave statements to a Dallas police officer while they were in custody after being arrested for the three robberies. (R. 3:120-28). These statements are testimonial in nature, the defense had been provided no previous opportunity to cross-examine Curl and Ward, and there was no showing that they were unavailable to testify. *Crawford* error, however, is subject to a harmless error analysis on federal habeas review. *See Guidry v. Dretke*, 397 F.3d 306, 330-31 (5th Cir 2005) (applying a harmful error analysis to a *Crawford* violation). In order to prevail on federal habeas review of this claim, petitioner must establish that the error had a substantial and injurious effect or influence on the verdict. *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993).

In his statement, Ward made only a couple of references to petitioner. He stated that petitioner was at Shanda Hargrave's ("Shanda") house when he received and returned a call from the house. Shanda had informed him that "they" had been talking about "hitting a lick," or robbing someone. Petitioner sat in the front passenger seat of the car, and Ward, petitioner, Luther Hargraves ("Hargraves"), and Curl got out of the car, and "we" walked up to some white guys. Ward admits that he and Curl had guns and that Curl demanded money from the men, but he made no statements about petitioner's involvement. (Supp. R.:State's Ex. #14). In his statement, Curl claimed that he was at Shanda's house "smoking weed" with Hargraves and petitioner before they went and picked up Ward. He made no further references to petitioner. He instead acknowledged that he and Ward had guns, that all four jumped out of the car, and that "we" did the lick. (Supp. R.:State's Ex. #16).

At trial, the State presented substantial evidence of petitioner's involvement in the crime. Hargraves testified that petitioner and Shanda (his mother) had a relationship, that he had heard petitioner talking once or twice in the previous days before the robbery about needing some money and "hitting a lick," and that petitioner was at the house when they left to pick up Ward to commit the robbery. Hargraves further testified that petitioner rode in the front passenger seat of the car, that they all got out of the car except for Shanda, that Ward and Curl pulled guns on people while petitioner stayed about two to four feet away, and that petitioner ran from the police after the car was pulled over. (R. 3:144-60). This testimony was corroborated by testimony from two of the victims that "four or five" African-American males approached them and robbed them at gunpoint and then ran away. (R. 3:20-25, 40-44). A witness to the robbery also testified that he observed the robbery from his car and saw "four or five" African-American males rob the three victims at gunpoint. (R.

3:54-8). Two police officers who assisted in the arrest of the five people in the car testified that the car lead police on a high-speed chase, that an officer observed a wallet and cards being thrown out the back right window of the car, that petitioner was sitting in the front passenger seat of the car, and that petitioner ran from the police after being instructed to put his hands up and lie on the ground. He was caught half a block away while trying to jump a fence, but continued to resist arrest. (R. 3:67-78, 87-98). The State also presented evidence that at the time of the robberies, petitioner was thirty-two years old, Hargraves was seventeen, Curl was nineteen, Ward was twenty-two, and Shanda was thirty-four years old. (R. 3:139-40). As noted by the state appellate court, the two statements generally did not add anything to the State's case.

Petitioner also argues that the references in the statements to him smoking marijuana at Shanda's house were unduly prejudicial because the jurors might have thought that he participated in the robbery to support a drug habit or because he was under the influence. Hargraves testified that only he and Curl were smoking marijuana, although he had known petitioner to do so in the past. (R. 3:147). Ward admittedly was not at the house at the time. The testimony about any marijuana use by petitioner that day was ambiguous and was never emphasized by the State. Given the evidence presented to support the verdict, the Court cannot find that the references in the statements to petitioner smoking marijuana had a substantial and injurious effect when considered in context of the rest of the evidence presented at trial.

Moreover, petitioner was tried as a party to the crime, and the jury was instructed that:

> All persons are parties to an offense who are guilty of acting together in the commission of the offense. A person is criminally responsible as a party to an offense if the offense is committed by his own conduct, by the conduct of another for which he is criminally responsible, or both.
> A person is criminally responsible for an offense committed by the conduct of another if, acting with intent to promote or assist the commission of the offense,

> he solicits, encourages, directs, aids, or attempted to aid the other person to commit the offense. Mere presence alone will not constitute one a party to an offense.

(Tr. [F02-57913]:18-19). By finding petitioner guilty, the jury found beyond a reasonable doubt that petitioner acted with intent to promote or assist any of the other three in committing aggravated robbery by soliciting or encouraging or directing or aiding or attempting to aid one or more of them. (Tr.:20, 23). Officer Rudy Contreras testified that petitioner told him that he did not know what was going on, and that after they parked the car he got out to urinate and did not know what the other guys did. (R. 3:133). This story is contradicted by the testimony of the victims and witness as well as Hargraves. The state appellate court noted in its opinion that under state law, presence at the scene of a crime and flight from the scene of a crime are circumstances tending to show guilt. *See Bratton,* 156 S.W.3d at 695. These circumstances were proven through the testimony of the police officers, who corroborated Hargraves' testimony.

The state court's determination that the error was harmless under the more stringent beyond a reasonable doubt standard is neither an unreasonable application of the *Crawford* standard nor is it contrary to the *Brecht* harmless error standard. Petitioner has failed to establish that he is entitled to relief on these grounds.

### IV. BATSON ERROR

In his second ground for relief, petitioner asserts that the State exercised peremptory challenges in violation of *Batson v. Kentucky*, 476 U.S. 79 (1986). Specifically, petitioner contends that the State struck two of the prospective jurors because they were African-American.

In *Strauder v. West Virginia*, 100 U.S. 303 (1880), the Supreme Court held that when a black defendant has been tried by a jury from which members of his own race have been purposely excluded, he has been denied equal protection of the law. In *Batson v. Kentucky*, the Court

reaffirmed this holding and further held that the Equal Protection clause forbids a prosecutor from using his peremptory challenges to challenge potential jurors solely on account of their race. *Id.* at 88. The Court also held that in order to establish a claim of purposeful racial discrimination in the jury selection process by the use of peremptory challenges by the prosecutor, a criminal defendant must first make out a *prima facie* case of purposeful discrimination by showing that he is a member of a racial group capable of being singled out for differential treatment and that the prosecutor has exercised peremptory challenges to remove from the jury panel members of his race. A defendant must then show that these facts and other circumstances raise an inference that the prosecutor used the practice to exclude veniremembers based on their race. Once this showing has been made, the burden then shifts to the State to provide a race-neutral explanation for challenging the jurors. *Id.* at 96. If the State presents a racially-neutral explanation for a strike, the trial court must decide whether the defendant has carried his burden of proving purposeful racial discrimination. *Id.* at 98; *Purkett v. Elem*, 514 U.S. 765, 767-68 (1995).

In deciding whether the defendant has met his burden of proof, the truthfulness of the prosecutor's explanation must be determined by assessing the credibility and demeanor of the State's attorney. *Hernandez v. New York*, 500 U.S. 352, 365 (1991). This judgment is one which lies "peculiarly within a trial judge's province." *Id.* Implausible or fantastic justifications are usually pretexts for purposeful discrimination. *Purkett v. Elem*, 514 U.S. 765, 768 (1995) (per curiam). "[T]he trial court's decision on the ultimate question of discriminatory intent represents a finding of fact of the sort accorded great deference." *Hernandez*, 500 U.S. at 364; *accord*, *Batson*, 496 at 98 n.21 (holding that, when a finding of fact turns "on evaluation of credibility, a reviewing court ordinarily should give those findings great deference"). Under 28 U.S.C. § 2254(e)(1), the

resolution of factual issues by the state court is presumptively correct and will not be disturbed unless the state prisoner rebuts the presumption by clear and convincing evidence.

Petitioner contends that the trial court erred in overruling defense counsel's *Batson* objection to the State's peremptory challenge to juror number 24, Regina Sabbath, and juror number 29, Byron Jones.[4]  Specifically, petitioner claims that the State struck Jones on the basis of his race because the reason given by the State–that Jones was very quiet and never answered questions directly or made eye contact–is unreasonable, since the prosecutors questioned the entire venire, not Jones directly. Petitioner also asserts that the reason the State struck Sabbath–because she stated that she could not follow the law–is not supported by the record of the trial. (Mem. at 7-9).  The state habeas court concluded that petitioner's *Batson* claim is without merit. (S.H.Tr.:70).  The Court of Criminal Appeals then denied relief based on the findings of the trial court. (S.H.Tr.:70).  This decision is not contrary to federal law.

The record from the trial reflects that defense counsel made a *Batson* objection to the State's exercise of peremptory challenges against eight African-American and one Hispanic venire members. (R. 2:143).  The prosecutor gave reasons for striking each, including statements regarding difficulty in judging someone else, past experiences trusting police officers, and family members who had been convicted of or had pending offenses. (R. 2:144-48).  As to Ms. Sabbath, the prosecutor stated that notwithstanding her statements that she could not follow the law, he struck her because she expressed concerns with the law of parties, and they would be trying petitioner under the law of parties. (R. 2:146).  The record from the voir dire reflects that the prosecutor questioned the veniremembers, including Sabbath, about the law of parties.  (R. 2:126-27).  The trial

---

[4] Defense counsel raised a *Batson* objection with respect to nine jurors struck by the State, but petitioner's ground for relief addresses only two.

judge assessed the credibility and demeanor of the prosecutor and determined that this was a race-neutral reason for the strike. Petitioner has not presented clear and convincing evidence to rebut the presumption of correctness afforded this factual finding.

As to Mr. Jones, the prosecutor stated that he struck him because he did not list either an occupation or a phone number on his questionnaire, he was young and single, and he never made eye contact with the prosecutor or answered any of his questions, unlike other members of the venire. (R. 2:147). Contrary to petitioner's contentions, the test is not whether the reason for the strike is rational; it is whether the reason is race-neutral. *See United States v. Webster*, 162 F.3d 308, 349 (5th Cir. 1998). The trial judge found that the State had provided race-neutral reasons for the strikes and overruled the objections. Defense counsel did not argue at that point that any of the reasons given were pretextual in nature. Petitioner has failed to rebut the presumption of correctness afforded this factual finding with clear and convincing evidence to the contrary.

Petitioner also asserts generally that the reasons given for striking these two venire members are pretextual in nature because the same reasons applied to white jurors who were not struck. He provides no evidence for this assertion. The State recognizes that in *Miller-El v. Dretke*, 545 U.S. 231, 125 S.Ct. 2317, 2340 (2005), the Supreme Court held that the state court findings that the reasons articulated for several peremptory strikes were race-neutral and nonpretextual were shown to be incorrect by clear and convincing evidence. In *Miller-El*, however, the Court based its decision on the fact that Miller-El had presented evidence that: 1) ten of eleven African-American veniremembers had been peremptorily struck by the State; 2) the reasons given for peremptorily striking the African-Americans applied equally to non-African-Americans who were permitted to serve on the panel; 3) the State shuffled the jury two different times when a large number of African-

Americans were in the front of the venire panel; 4) the State posed contrasting questions to African-Americans and non-African-Americans, using graphic descriptions of the death penalty to African-Americans and bland language to others; and 5) the Dallas County District Attorney's office had, for decades preceding Miller-El's trial, followed a policy of systematically excluding African-Americans from juries. *Id.* at 2325-30, 2332-39. While petitioner was convicted in Dallas County, Texas, he has presented no evidence concerning the racial make-up of the jury that sat in his trial and no evidence about the percentage of African-Americans who were stricken by the State. The record shows that the defense challenged six other peremptory strikes on the basis of *Batson*, unsuccessfully, but there is no other evidence about the racial make-up of the jury or the race of other jurors who were either accepted or stricken by the State. The reasons given for the other *Batson*-challenged strikes were different.

In conclusion, Petitioner has failed to establish that the state habeas court's decision denying this claim is an unreasonable application of *Batson* or that he is entitled to relief on this ground.

## V.  INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL

In his fourth, sixth, and tenth grounds for relief, petitioner asserts that his trial counsel provided ineffective assistance of counsel. Petitioner alleges that his trial counsel was ineffective by failing to object to the admission of the accomplices' statements into evidence on the basis that the extraneous offense contained in the statements rendered the statements extremely prejudicial to petitioner. He asserts that counsel was ineffective for failing to request a jury instruction that would require the jury to find the existence of extraneous offenses beyond a reasonable doubt. Petitioner also argues that trial counsel was ineffective for failing to object to the State's failure to provide adequate notice of its intent to introduce extraneous offenses into evidence.

To successfully state a claim of ineffective assistance of counsel, petitioner must demonstrate (1) that counsel's performance was deficient and (2) that the deficient performance prejudiced his defense. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). To determine whether counsel's performance is constitutionally deficient courts "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable assistance." *Strickland*, 466 U.S. at 689. Further, "[t]he reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions." *Id.* at 691. A failure to establish either prong of the *Strickland* test requires a finding that counsel's performance was constitutionally effective. *Id.* at 696.

To establish prejudice, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. The prejudice component of the *Strickland* test "focuses on the question whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair." *Williams v. Taylor*, 529 U.S. 362, 393 n.17 (2000) (citations and internal quotation marks omitted).

At the state habeas level, petitioner's trial and appellate counsel, Gary Udashen, submitted an affidavit. In this affidavit, Udashen states that he did not object to the extraneous offense contained in one of the statements admitted at trial because he objected to the admission of the two statements in their entirety and did not believe that one of the statements was separately inadmissible based on the reference to marijuana alone. It was his opinion that the statement that petitioner was smoking marijuana made no difference on the issue of whether the jury believed petitioner to be

guilty of the robberies.  He did not request a reasonable doubt instruction on the extraneous offense of smoking marijuana because the defense never contested this issue at trial and therefore, any instruction would have been superfluous and irrelevant.  Finally, he did not object on the basis that he had inadequate notice of the State's intent to offer evidence of an extraneous offense because he felt that he had received adequate notice of what the State intended to introduce, and there was nothing presented of which he was unaware. (S.H.Tr.:72-74).  The state habeas court found Mr. Udashen to be credible. (S.H.Tr.:69).  It concluded that petitioner had failed to establish that trial counsel was ineffective and that counsel had made strategic choices that petitioner had failed to show prejudiced his defense (S.H.Tr.:70).  The Court of Criminal Appeals denied petitioner's state application for writ of habeas corpus on the findings of the trial court. (S.H.Tr.:cover).  This denial is not an unreasonable application of the *Strickland* standard.

 The failure to make meritless objections does not constitute deficient performance. *See Clark v. Collins*, 19 F.3d 959, 966 (5th Cir. 1994).  Moreover, the Fifth Circuit has held that, if counsel has made an adequate investigation, an informed decision made based on trial strategy cannot be the basis for a claim of having received ineffective assistance of counsel unless the decision was so poorly chosen that it "permeates the entire trial with obvious unfairness." *United States v. Cotton*, 343 F.3d 746, 753(5th Cir. 2003), *cert. denied*, 540 U.S.  11865 (2004), *quoting United States v. Jones*, 287 F.3d 325, 331 (5th Cir. 2002); *Smith v. Cockrell*, 311 F.3d 661, 668 (5th Cir. 2002).

Here, trial counsel was not ineffective for failing to object to the admissibility of the two statements on the basis that one of them contained an extraneous offense because petitioner has not shown that this objection was a meritorious one or that, had it been made, the statements would not

have been admitted by the trial court. Likewise, counsel was not ineffective for failing to receive adequate notice of the extraneous offense because the record of the trial reflects that he had requested and received notice of this issue. (R. 3:5). Finally, petitioner has failed to establish that trial counsel was ineffective for failing to request a reasonable doubt instruction with regard to the extraneous offense because he has failed to show a reasonable probability that had this instruction been requested and such a request been granted, he would not have been found guilty. Rather, as noted by trial counsel, the issue of whether petitioner was or was not smoking marijuana prior to the robberies is superfluous to the issue decided by the jury at petitioner's trial. Petitioner's claims of ineffective assistance of counsel are without merit and should be denied.

## VI. INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL

Petitioner further asserts in his third, fifth, seventh, and ninth grounds for relief that his appellate counsel was ineffective. In particular, he complains that appellate counsel failed to adequately brief on appeal the issue of the harm suffered by petitioner by the admission into evidence of the accomplice statements. He further contends that appellate counsel failed to raise as issues on appeal: 1) that trial counsel was ineffective for failing to request a reasonable doubt jury instruction regarding the extraneous offenses; 2) that the trial court erred in denying the defense request for a specific jury instruction on the law of parties; and 3) that *Batson* error occurred at trial.

The federal constitution guarantees a criminal defendant the effective assistance of counsel on appeal. *Evitts v. Lucey*, 469 U.S. 387, 396 (1985). Whether counsel has been ineffective is determined by using the standard enunciated in *Strickland v. Washington*, 466 U.S. 668 (1984). Under *Strickland*, Petitioner must show a reasonable probability that, but for his counsel's deficient representation, he would have prevailed on his appeal. *Briseno v. Cockrell*, 274 F.3d 204, 207 (5th

Cir. 2001).

To render effective assistance of counsel, appellate counsel need not raise every non-frivolous issue on appeal. *United States v. Williamson*, 183 F.3d 458, 462 (5th Cir. 1999). "Instead, to be deficient, the decision not to raise an issue must fall 'below an objective standard of reasonableness.'" *United States v. Phillips*, 210 F.3d 345, 348 (5th Cir. 2000) (quoting *Strickland*, 466 U.S. at 688). "[A] reasonable attorney has an obligation to research relevant facts and law, or make an informed decision that certain avenues will not prove fruitful. Solid, meritorious arguments based on directly controlling precedent should be discovered and brought to the court's attention." *Williamson*, 183 F.3d at 462-63 (footnote and citations omitted). To determine whether appellate counsel was deficient, the Court thus must consider whether the omitted challenge "would have been sufficiently meritorious such that [the attorney] should have raised it on appeal." *Phillips*, 210 F.3d at 348.

This Court has already determined that the trial court did not err in overruling defense counsel's *Batson* objections and that trial counsel was not ineffective for failing to request a reasonable doubt jury instruction regarding the extraneous offenses. Accordingly, appellate counsel was not ineffective for failing to raise these as points of error on appeal. *See United States v. Phillips*, 210 F.3d 345, 348 (5th Cir. 2000) (holding that attorneys do not render deficient representation by failing to present meritless claims on appeal). Moreover, this Court has addressed petitioner's *Crawford* claim on its merits, including his argument that the extraneous offense included in one of the statements was unduly prejudicial to petitioner. Because this argument has been rejected, petitioner has not shown any prejudice from appellate counsel's failure to raise the extraneous offense in briefing the *Crawford* issue.

Finally, petitioner asserts that appellate counsel was ineffective for failing to raise as an issue that the trial court erred in denying the defense request for a specific jury instruction on the law of parties. In his affidavit, petitioner's appellate counsel explains that he did not raise this as an issue because after researching all potential issues, he concluded that this issue had no merit and would not result in a reversal of petitioner's conviction. (S.H.Tr.:73). Therefore, the record before this Court is that appellate counsel acted as reasonably effective counsel by researching the relevant facts and law and making an informed decision that this avenue would not prove fruitful. Moreover, the trial court did not err in refusing defense counsel's request for an additional jury instruction on the law of parties. Defense counsel requested that the jury be instructed that mere knowledge that a crime is being committed is not sufficient to establish that a defendant is guilty under the law of parties and that the jury had to find beyond a reasonable doubt that the defendant was a participant and not merely a knowing spectator. (R. 4:5). This request was denied. (R. 4:6). Instead, as noted earlier, the jury received an instruction on the law of parties that tracks the language of the applicable statute that mere presence at the scene of the crime does not prove guilt as a party, and an instruction applying the law of parties to the facts of petitioner's case. (Tr.:18-20); *see* TEX. PENAL CODE ANN. § 7.01(a) (Vernon 1994). Petitioner has neither alleged nor proven that he was legally entitled to an additional instruction on the issue of knowledge. Because petitioner has not shown that this claim would have been meritorious on appeal, petitioner has failed to establish that appellate counsel was ineffective in this regard.

Petitioner's claims of ineffective assistance of counsel were addressed by the state habeas court and denied on their merits. (S.H.Tr.:cover, 69-70). This denial is not an unreasonable application of the *Strickland* standard, and these grounds for relief should be denied.

## VII. STATE CONSIDERATION OF CLAIMS

Petitioner raised his claims in his state writ. The Court of Criminal Appeals denied the state writ on its merits, and thus petitioner's claims were adjudicated on the merits. The decision at the state level is consistent with, and involved no unreasonable application of, Supreme Court precedent. The adjudication of the claims did not result in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented to the state court. Under applicable Supreme Court standards and the AEDPA standards, petitioner is entitled to no habeas relief.

## VIII. EVIDENTIARY HEARING

Upon review of the petition and answer filed herein and the proceedings held in state court as reflected in the state-court records, an evidentiary hearing appears unnecessary.

## IX. RECOMMENDATION

The Court should **DENY** with prejudice the request for habeas corpus relief brought pursuant to 28 U.S.C. § 2254.

**SIGNED on this 16th day of March, 2009.**

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

The United States District Clerk shall serve a copy of these findings, conclusions, and recommendation on all parties by mailing a copy to each of them. Pursuant to 28 U.S.C. § 636(b)(1), any party who desires to object to these findings, conclusions and recommendation must file and serve written objections within ten days after being served with a copy. A party filing objections must specifically identify those findings, conclusions, or recommendation to which objections are being made. The District Court need not consider frivolous, conclusory or general objections. Failure to file written objections to the proposed findings, conclusions, and recommendation within ten days after being served with a copy shall bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted by the District Court, except upon grounds of plain error. *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (*en banc*).

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE